# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-04-00323-CR

**Allan Patrick Norris, Appellant**

**v.**

**The State of Texas, Appellee**

**FROM THE DISTRICT COURT OF TOM GREEN COUNTY, 119TH JUDICIAL DISTRICT
NO. B-03-0799-S, HONORABLE CURT F. STEIB, JUDGE PRESIDING**

## M E M O R A N D U M   O P I N I O N

The district court found Allan Patrick Norris guilty of burglary of a habitation. The court found that he intentionally and knowingly entered a habitation without the effective consent of its owner, Barry Nettles, with the intent to commit the offense of assault. *See* Tex. Pen. Code Ann. § 30.02(a)(1) (West 2003). The court assessed sentence at three years in prison. Norris challenges the legal and factual sufficiency of the evidence to support the conviction, contending that the State failed to show that he entered the habitation without the effective consent of the owner or that he had the requisite intent to commit an assault. We affirm the judgment.

## BACKGROUND

In July 2003, appellant was dating Melissa Campos, daughter of Sherry Nettles and Barry Nettles. The Nettleses were not happy with the relationship.

On July 10, 2003, Campos had dinner with the Nettleses at their house. She asked for and received five dollars to help pay for gasoline she needed in order to move residences. At some point during the visit, Barry Nettles made an unflattering comment about Campos.

About 4 p.m. the next day, Campos called Sherry Nettles and had a conversation. Ten minutes later, appellant called Sherry Nettles and cursed at her for being disappointed in Campos; he also said, essentially, that Barry Nettles's remark about Campos from the night before was not well-founded. Campos, who heard appellant's side of the conversation, testified that appellant told her mother to tell her father that appellant was taking care of Campos, and that Barry Nettles should refrain from making disparaging comments. Sherry Nettles testified that she told appellant "not to ever come back out to the house." She said appellant then hung up the phone.

After coming home around 5 p.m., Barry Nettles called Campos and left a message on her voice mail. Barry Nettles testified that he told her "not to ever bring Patrick back to [the Nettleses'] house" because of appellant's comments during his phone call to Sherry Nettles. Barry Nettles conceded on cross-examination that he may have told Campos that he wanted the five dollars back. Campos testified that Barry Nettles told her in his message "[t]hat if my boy had a message to send to him, bring it to him, don't send it through his wife." Campos also testified that her father said, "You still owe me $5.00 so bring my $5.00 and [appellant] is not allowed out here anymore." Campos testified that she told appellant that her father wanted the five dollars, but she did not tell appellant that he was not welcome at her parents' house.

Barry Nettles testified that he locked the front door as a result of the previous phone conversation between Sherry Nettles and appellant because he was worried about a violent

2

confrontation, even though they had not had such a confrontation with appellant. After dinner, Sherry Nettles went outside to feed the dogs and Barry Nettles remained inside. Barry Nettles heard pounding on the front door, but did not go to investigate because, he said, "I suspected who it might be, but then I heard my wife's voice out front, so I unlocked the door and opened the door." Sherry Nettles testified that she did not hear any pounding on the door, but did see a pickup truck drive up. When she came around the corner of the house, she saw appellant standing on the sidewalk.

Campos testified that appellant tried to hand the money to her mother, but that her mother would not take it; Campos testified that, as far as she knew, the money fell to the ground. Sherry Nettles testified that appellant shoved five dollars at her, and she turned and saw that her husband, Barry, had opened the front door; Campos, however, testified that her mother went to the front door and opened it. Barry Nettles testified that his wife handed him the five dollars; he could not recall if she or appellant was holding the screen door open. Barry Nettles testified that he told appellant to leave the property and take Campos with him. Appellant's cousin, a juvenile, who was in the pickup with Campos, testified that Sherry Nettles was holding the screen door open when the physical confrontation began.

Sherry Nettles hit appellant in the mouth. Barry Nettles testified that he only saw her hit appellant once, but Sherry Nettles testified that, after appellant asked her if she had to fight Barry Nettles's fights for him, she hit appellant in the mouth again. Campos testified that her mother hit appellant twice and that her father yelled at appellant while standing on the front porch "within the sweep" of the screen door. Barry Nettles testified, "I was inside the house" during these events.

3

Campos testified that she got out of the pickup and started walking toward the house; she said that, when her father then started cussing at her, appellant hit him.

The Nettleses testified that appellant walked around Sherry Nettles and punched Barry Nettles, who Sherry Nettles testified was standing "inside the threshold of the house," holding the screen door open. Barry Nettles testified, "I was standing just inside the doorway whenever he hit me." Appellant's cousin testified that Barry Nettles was "standing inside the door" when appellant struck his first blow. Barry Nettles testified that appellant hit him with his fist. Barry Nettles testified that appellant "came inside the house after me." He testified that appellant hit him several times and that he did not hit appellant. Sherry Nettles testified that appellant "knocked [Barry] down in the living room, and started pounding on him, started hitting him." Sherry Nettles and her daughter tried to separate the two men, but then were drawn into the fight as it progressed out into the front yard and intensified before Campos and appellant left.

The court found that this evidence satisfied the elements of burglary of a habitation.

**DISCUSSION**

By two points of error, appellant challenges the legal and factual sufficiency of the evidence. He contends that the State failed to prove every element of the offense. The burglary statute provides in relevant part that "[a] person commits an offense if, without the effective consent of the owner, the person: (1) enters a habitation, or a building (or any portion of a building) not then open to the public, with intent to commit a felony, theft, or an assault . . . ." Tex. Pen. Code Ann. § 30.02(a)(1) (West 2003). The statute provides that "enter" means "to intrude: (1) any part of the body . . . ." *Id.* § 30.02(b). While no culpable mental state is mentioned in the language of section

4

30.02(a), the court of criminal appeals has held that the entry must be knowing and intentional. *Davila v. State*, 547 S.W.2d 606, 608 n.2 (Tex. Crim. App. 1977). Appellant argues that the State failed to prove that he intentionally or knowingly entered the Nettleses' home without their consent while intending to commit assault.

We must first determine whether the evidence is legally sufficient to support the judgment. *See Clewis v. State*, 922 S.W.2d 126, 133 (Tex. Crim. App. 1996). In a legal sufficiency review, we view all of the evidence in the light most favorable to the verdict and then determine whether a rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *See Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *Escamilla v. State*, 143 S.W.3d 814, 817 (Tex. Crim. App. 2004). The trial court, as the finder of fact in a bench trial, is entitled to resolve any conflicts in the evidence, to evaluate the credibility of the witnesses, and to determine the weight to be given any particular evidence. *See Jones v. State*, 944 S.W.2d 642, 647 (Tex. Crim. App. 1996). Any inconsistencies in the evidence should be resolved in favor of the verdict. *Moreno v. State*, 755 S.W.2d 866, 867 (Tex. Crim. App. 1988).

Appellant argues that the State failed to show that he entered the home with the requisite mental state. He admits entering the home and does not deny intending to assault Barry Nettles, but argues that the evidence shows that he was invited to the home and does not show that he intended or knew he would enter the home while committing the assault. He argues that the evidence shows that he was asked to return the borrowed money, that he knocked on the door, and that he inadvertently tumbled into the home after he was hit and otherwise provoked into escalating the confrontation. He relies on language from the court of criminal appeals, which opined, "It is

5

entirely possible that a person may not intend to enter a habitation or know that his actions would cause him to enter a habitation (i.e., entry by mistake or accident) even if he knew that he was not welcome there." *Holloway v. State*, 583 S.W.2d 376, 377 (Tex. Crim. App. 1979) (op. on reh'g).[1]

Viewed most favorably to the verdict, the evidence is sufficient to support the conviction. Appellant did not have consent from either Nettles to enter their home. Sherry Nettles told appellant not to ever come to their home. Although Barry Nettles left a message that appellant should bring complaints directly to him and that he wanted repayment of the five dollars, the district court was entitled to determine that Barry Nettles did not thereby invite appellant into his home. The court could also interpret Sherry Nettles hitting appellant and Barry Nettles yelling at him as clear revocation of any perceived previous invitation before appellant entered their home. The evidence also supports a finding that appellant entered their home intending to assault Barry Nettles. More than one witness placed Barry Nettles as standing inside his home with the door open when appellant first hit him. Barry Nettles also testified that appellant "came inside the house after me," indicating a volitional entry rather than an inadvertent tumble; once in the house, it is undisputed that appellant

---

[1] The court of criminal appeals reversed the conviction in *Holloway* because of a defective jury instruction regarding the defendant's mental state upon entering the house. *Holloway v. State*, 583 S.W.2d 376, 377 (Tex. Crim. App. 1979) (op. on reh'g). Holloway, whose wife had left him, was convicted of criminal trespass after he burst into his father-in-law's house demanding to know where Holloway's wife was. *Id.* at 376. The court of criminal appeals reversed the conviction because the trial court had not instructed the jury that the State must prove that Holloway's entry was intentional and knowing; the court held that the defendant's mental state when entering the home was an essential element of the offense. *Id.* at 377.

This case is procedurally distinct from *Holloway*. As this was a trial to the court, there was no jury instruction to challenge, nor does appellant challenge the indictment. He challenges only the sufficiency of the evidence, using the language of *Holloway* to illustrate support for the proposition that he cannot be convicted if he did not have the requisite mental state upon entering the home.

6

hit Barry Nettles several times. Viewed most favorably to the verdict, this is sufficient evidence to show that appellant entered Barry Nettles's house intending to assault him. We overrule point of error one.

In a factual sufficiency review, we view all of the evidence in a neutral light, and we will set the verdict aside only if the evidence is so weak that the verdict is clearly wrong and manifestly unjust, or the contrary evidence is so strong that the standard of proof beyond a reasonable doubt could not have been met. *See Zuniga v. State*, 144 S.W.3d 477, 484-85 (Tex. Crim. App. 2004). We review the fact-finder's weighing of the evidence and may disagree with the fact-finder's determination. *Clewis*, 922 S.W.2d at 133. But a factual sufficiency analysis can consider credibility only on those few matters bearing on credibility that can be fully determined from a cold appellate record. *See Johnson v. State*, 23 S.W.3d 1, 8 (Tex. Crim. App. 2000). A factual sufficiency review must employ appropriate deference to the fact-finder's role as the sole judge of the weight and credibility to be given to witness testimony. *Id*. at 7.

The evidence is factually sufficient to support the conviction. Viewed neutrally, the evidence supports the conclusion that appellant did not have consent to intrude any part of his body into the house. Despite appellant's argument that he was invited to the house to return the money, there is ample evidence that he was not invited into the home and that he nevertheless did so intending to assault Barry Nettles. Although witnesses described Barry Nettles's location with respect to the doorframe slightly differently, the court could reasonably conclude based on the conflicting evidence that Barry Nettles was inside his home, and that appellant knew that. Despite appellant's argument that he was invited to the home to return the money, there is ample evidence

7

to support a conclusion that any perceived invitation to enter the house was clearly revoked before appellant hit Barry Nettles. The evidence is clear that appellant's initial entry into the home on this occasion was pursuant to his punching Barry Nettles. Appellant does not contend that any provocations by the Nettleses legally justified his entry into the house. The evidence viewed neutrally sufficiently supports the conclusion that appellant intentionally and knowingly intruded at least a part of his body—namely, his fist—into the house intending to assault Barry Nettles. The record, viewed neutrally, also supports the conclusion that his subsequent entry of his entire body into the house was an intentional and knowing entry, performed with the intention of assaulting Barry Nettles. We overrule point of error two.

## CONCLUSION

Having found the evidence legally and factually sufficient, we affirm the judgment.

_____

Jan P. Patterson, Justice

Before Chief Justice Law, Justices Patterson and Puryear

Affirmed

Filed: July 27, 2005

Do Not Publish